# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ROBERTO JOSE MANDIQUE MEJIAS,

                Petitioner,

     v.                              Case No. 25-CV-1998

DALE J. SCHMIDT,
    *Dodge County Sheriff,*

                Respondent.

## DECISION AND ORDER

Roberto Jose Mandique Mejias is a citizen of Venezuela who is currently detained in this district at the Dodge County Jail. (ECF No. 11, ¶¶ 11, 18.) Mejias filed a petition for writ of habeas corpus arguing that his detention without eligibility for bond is unlawful. (ECF No. 11.) The court screened the petition and ordered the respondent to show cause why the writ should not be issued. (ECF No. 13.) Briefing is now complete, and both parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 10, 16.)

1. Background

Mejias has resided in the United States since 2021, when he was apprehended and released on an order of recognizance under Section 236 of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1226. (ECF No. 11, ¶¶ 2, 52–53; *see also* ECF No. 12-2 (order of release on recognizance).) Mejias was arrested on November 3, 2025, at a regular Immigration and Customs Enforcement (ICE) check-in appointment required by his release on recognizance. (ECF No. 11, ¶ 55.) Mejias is pursuing asylum and related relief in removal proceedings. (ECF No. 11, ¶ 64; ECF No. 12-12 (application for stay of deportation or removal).)

On November 17, 2025, an immigration judge ordered that Mejias be released from custody under bond of $7,500. (ECF No. 11, ¶ 57; *see also* ECF No. 12-10 (order for release on bond).) On November 18, 2025, ICE rejected Mejias' bond payment because the government is appealing[1] the bond determination on the grounds that Mejias is subject to mandatory detention. (ECF No. 11, ¶ 57; ECF No. 12-11 (refusal of bond payment).)

2. Analysis

Mejias' petition presents two issues: (1) whether Mejias is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) based on expedited removal proceedings stemming

---

[1] Neither party has raised the issue of administrative exhaustion, but the court notes that requiring exhaustion would be futile because the Board of Immigration Appeals has adopted ICE's statutory interpretation at the heart of this dispute. *See, e.g.*, *H.G.V.U. v. Smith*, No. 25-CV-10931, 2025 WL 2962610, at *4 (N.D. Ill. Oct. 20, 2025) (citing *Matter of Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (finding that immigration judges do not have the authority to hold a bond hearing where the moving noncitizen entered the country without inspection).

from his apprehension in 2021; and (2) whether Mejias is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) based on ICE's new interpretation of this statute. The court will address each issue in turn.

**2.1. Mandatory Detention based on Expedited Removal**

The government argues that Mejias must be detained because he has been subject to expedited removal proceedings since he was apprehended near the southern border in October 2021. (ECF No. 14 at 11–13.) Mejias contends he was not processed for expedited removal in 2021 because the Notice of Expedited Removal, Form I-860, was not completed or served on him. (ECF No. 15 at 3–4; *see also* ECF No. 14-2 at 2 (Form I-860 with second half left blank).)

The INA instructs that expedited removal cannot proceed for noncitizens who express an intention to apply for asylum or fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i). Mejias expressed an intention to apply for political asylum and received a credible fear interview in 2021. (*See* ECF No. 14-2 at 4–7.) Under 8 U.S.C. § 1225(b)(1)(B)(ii), noncitizens who are deemed to possess a credible fear of persecution at the time of their interview "shall be detained for further consideration of the application for asylum."

The Supreme Court has determined that §§ 1225(b)(1) and (b)(2) mandate detention throughout the completion of applicable proceedings "and authorize release prior to that point only under limited circumstances." *Jennings v. Rodriguez*, 583 U.S. 281, 301–302 (2018). More specifically, the INA expressly authorizes the Department of

Homeland Security (DHS) to exercise its discretion to parole applicants for admission "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *Biden v. Texas*, 597 U.S. 785, 806 (2022) (citing 8 U.S.C. § 1182(d)(5)(A) (describing the discretionary parole procedure)); *see also* 8 U.S.C. § 1225(a)(1) (defining "applicant for admission" as a noncitizen who arrives or is present in the United States who has not been admitted). Parole "shall not be regarded as an admission" into the country. 8 U.S.C. § 1182(d)(5)(A). When the purpose of parole has been served, the noncitizen's "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

But the government did not parole Mejias into the country under 8 U.S.C. § 1182(d)(5)(A). *See Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 749 (BIA 2023) (observing that release on recognizance pursuant to § 1226(a)(2)(B) is "legally distinct" from parole into the United States pursuant to § 1182(d)(5)(A)). Instead, ICE released him on an order of recognizance pursuant to 8 U.S.C. § 1226. (*See* ECF No. 12-2.) Section 1226(a) permits the arrest and detention of noncitizens already in the country pending the outcome of their removal proceedings, and it authorizes the Attorney General to release those noncitizens on bond, unless they fall into a category involving criminal offenses or terrorist activities. *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018).

The government acknowledges that the rationale for Mejias' release in 2021 is "admittedly unclear" and part of a "puzzling series of events" that were "inconsistent

with established procedural norms." (ECF No. 14 at 12 & n.4.) Mejias argues that the government cannot wait four years to attempt to resume "expedited" removal proceedings after releasing him on his own recognizance pursuant to a different statute for noncitizens in removal proceedings that permits bond. (*See* ECF No. 15 at 3–9.) Mejias also points to his 2025 arrest warrant issued under 8 U.S.C. § 1226 as evidence that the government has not presently placed him in expedited removal proceedings. (*See* ECF No. 15 at 13 (citing ECF No. 12-7 (warrant for arrest dated 11/03/2025).)

The INA plainly states that expedited removal does not apply to noncitizens who have "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Mejias had been in the United States for over four years when ICE arrested him pursuant to a warrant in November 2025. The government's contention that Mejias has been in ongoing proceedings under § 1225(b)(1) this whole time is simply implausible. *See Patel v. Crowley*, No. 25-C-11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025) ("Thus, the Government has affirmatively decided to treat [the petitioner] as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that he is detained under Section 1225(b).") (citing *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023) (quoting *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020) (observing that the "Chenery doctrine requires [an] agency to 'defend its actions based on the reasons it gave when it acted' in the interest of promoting agency

accountability, instilling confidence in agency decisions, and maintaining an orderly process of review."); *but see Paredes Padilla v. Galovich*, No. 25-CV-865-JDP, 2025 WL 3640960, at *4 (W.D. Wis. Dec. 16, 2025) (concluding that § 1225(b)(1)(B)(ii) mandated the petitioner's detention even though the government had not complied with its requirement to detain him seven years prior under § 1225(b)).

"There is no language in the statute to suggest that detainment is based upon a noncitizen's *first* interaction with immigration officials." *Alonso v. Olson*, No. 25-CV-1660-LA, 2025 WL 3240928, at *2 (E.D. Wis. Nov. 20, 2025) (analyzing §§ 1225 and 1226 and finding petitioner eligible for bond under § 1226 even though he "was initially apprehended upon entry into the United States [12 years prior], detained for some time, and ultimately released of his own recognizance to appear at a later time").

ICE released Mejias pursuant to § 1226 in 2021 and arrested him pursuant to § 1226 in 2025. (*See* ECF Nos. 12-2, 12-7.) Given Mejias' release and subsequent arrest under § 1226, the court concludes that § 1225(b)(1) does not govern his detention and eligibility for bond. *See Sanchez v. Hott*, No. 1:25-CV-02137-JRS-TAB, 2025 WL 3765959, at *5 (S.D. Ind. Dec. 30, 2025) (finding government did not exercise authority to detain noncitizen under § 1225(b)(1), so by opting to release him under § 1226 and later arrest him under § 1226 the government's "actions and representations" made clear that the petitioner's re-detention was "only authorized under § 1226(a)"); *see also Loja v. FCI Berlin*, No. 1:25-CV-386-JL-TSM, \_\_\_ F.Supp.3d \_\_\_, 2025 WL 3079160, at *2 (D.N.H. Nov. 4, 2025) (finding

"that by releasing [the petitioner] on bond under § 1226(a), rather than humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), the government failed to reserve its right to treat [the petitioner] 'in the same manner as that of any other applicant for admission to the United States'") (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also De Andrade v. Moniz*, 802 F. Supp. 3d 325, 332–33 (D. Mass. 2025) ("The government elected not to use that mechanism [for paroling applicants for admission into the United States without changing their status]. It cannot now turn back the clock, and neither can the Court."); *Hasan v. Crawford*, 800 F. Supp. 3d 641, 655 (E.D. Va. 2025) (same). Therefore, the court rejects the government's argument that Mejias' present detention is mandated by expedited removal proceedings under 8 U.S.C. § 1225(b)(1).

**2.2. Mandatory Detention based on New Statutory Interpretation**

The second issue presented by Mejias' petition is whether he is nonetheless subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). As of July 8, 2025, the government classifies any noncitizen who entered the United States without inspection, regardless of the length of time present in this country, as an "applicant for admission" under § 1225(b)(a)(1) and deems the phrase "applicant for admission" equivalent to "alien seeking admission" under § 1225(b)(2)(A), therefore rendering such an individual subject to § 1225(b)(2)(A)'s requirement of mandatory detention. *See Garcia Guerrero v. Schmidt*, No. 25-CV-1975-BBC, 2026 WL 45263, at *1–2 (E.D. Wis. Jan. 7, 2026) (acknowledging historical practice and new policy). ICE previously afforded bond hearings under § 1226

to noncitizens if they had resided in the United States for years prior to being apprehended and placed in removal proceedings. *See id.* The about-face is purely a new interpretation of an unchanged statute.

Although no binding precedent currently dictates the outcome, the Seventh Circuit recently explained that the government's interpretation of § 1225(b)(2)(A)'s mandatory detention provision is unlikely to succeed on the merits. *See Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–63 (7th Cir. 2025); *but see Rojas v. Olson*, No. 25-3127, ECF No. 31 (7th Cir. Jan. 12, 2026) (denying petitioner's motion for release pending appeal without explanation and over the dissent of one judge). The majority of district courts across the country have granted similar habeas petitions and ordered that the noncitizens be given bond hearings. *See, e.g.*, *Valenciano Vela v. Schmidt*, No. 25-CV-2004, 2026 WL 161334-BBC, at *2 (E.D. Wis. Jan. 21, 2026) (granting petition); *Alonso v. Olson*, No. 25-CV-1660-LA, 2025 WL 3240928, at *3 (E.D. Wis. Nov. 20, 2025) (same); *but see Ugarte-Arenas v. Olson*, No. 25-CV-1721-WCG, 2025 WL 3514451, at *5 (E.D. Wis. Dec. 8, 2025) (denying petition); *Hernandez v. Olson*, No. 25-CV-1670-BHL, 2026 WL 161509, at *5 (E.D. Wis. Jan. 21, 2026) (denying petition but acknowledging "that a strong majority of other courts have rejected the government's reading of these statutes").

Upon careful review of the evolving legal landscape, this court finds most persuasive those decisions granting habeas petitions for similarly situated noncitizens. This conclusion is primarily driven by the distinct terminology Congress employed in

§ 1225(b)(2)(A). The government argues that Mejias must be an "applicant for admission" as defined in § 1225(a)(1) because he is foreign national who has not been "admitted" into the United States. (ECF No. 14 at 10.) Be that as it may, the plain language of § 1225(b)(2)(A) does not explain the use of "applicant for admission" elsewhere in the chapter with the use of "alien seeking admission" employed in the context of mandatory detention. *See Ramirez Valverde v. Olson*, No. 25-CV-1502, 2025 WL 3022700, at *3 (E.D. Wis. Oct. 29, 2025) (observing that "[o]nly an 'alien seeking admission' who is not clearly and beyond a doubt entitled to be admitted must be detained") (quotations omitted).)

As other courts have observed, "[t]he use of 'seeking' denotes an active and present effort … [and] cannot be said to encompass a person who, despite having never been 'admitted,' has been living in the United States for years." *Ramirez Valverde v. Olson*, No. 25-CV-1502-BBC, 2025 WL 3022700, at *3 (E.D. Wis. Oct. 29, 2025); *see also Garcia Guerrero v. Schmidt*, No. 25-CV-1975-BBC, 2026 WL 45263, at *1–2 (E.D. Wis. Jan. 7, 2026) (observing that people who have been in the United States for some time "may be regarded as more likely to have the personal and community ties that make [them] suitable for release on bond").

Moreover, the government's "interpretation of § 1225(b)(2) would make the recently enacted amendment to § 1226(c) superfluous." *Diaz v. Olson*, No. 2:25-CV-00631-JRS-MKK, 2025 WL 3765960, at *5 (S.D. Ind. Dec. 30, 2025). The amendment added new classes of noncitizens who are ineligible for bond under § 1226(a), with one such class of

9

people being noncitizens who have not been admitted into the United States and have been charged with specific crimes. *See* Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). This amendment would serve no purpose if, as the government contends, all noncitizens who have not been admitted must be detained under § 1225(b)(2). Therefore, the court cannot accept the government's expansive interpretation of § 1225(b)(2). *See Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010) (following the canon of statutory interpretation "against interpreting any statutory provision in a manner that would render another provision superfluous").

Mejias is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Because the government has demonstrated his detention is pursuant to § 1226, Mejias is eligible for bond consistent therewith.

3. Conclusion

**IT IS THEREFORE ORDERED** that Roberto Jose Mandique Mejias' petition for writ of habeas corpus is **granted**. Within **seven days** of this order, the respondent must either: (1) provide Mejias with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226; or (2) release Mejias from custody under reasonable conditions of supervision. The Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 27th day of January, 2026.

WILLIAM E. DUFFIN
U.S. Magistrate Judge